UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
X
SEMYON KREMER, ADEMOLA OLUWO
and IAN MARTIN                                                    AMENDED COMPLAINT

                                    Plaintiffs,                   Index No.: 06cv9949

                    -against-
                                                                 Jury Trial Demanded
NEW YORK STATE INSURANCE DEPARTMENT,
ANNE FRANCESE (in her individual capacity and in her
official capacity), MITCHELL GENNAOUI (in his
individual capacity and in his official capacity), and KAREN
COLE (in her individual capacity and in her official capacity,

                           Defendant.
-------------------------------------------------------------------
X

        Plaintiffs, SEMYON KREMER, ADEMOLA OLUWO and IAN MARTIN  by their

attorneys, Leeds Morelli & Brown, P.C., as and for their complaint against the Defendants

herein, allege, upon personal knowledge and upon information and belief as to all other matters:


                        **JURISDICTION AND VENUE**


1.      This is a civil action brought pursuant to 42 U.S.C. § 1983 to redress discrimination

        against Plaintiffs in the terms, conditions and privileges of employment of Plaintiffs by

        the Defendants, as well as deprivation by the Defendant, under the policies, ordinances,

        custom and usage of all rights, privileges and immunities secured to Plaintiffs by the

        Fourteenth Amendment to the Constitution of the United States and all the laws and

                                            1

2.      This action is also brought against the Defendant for its violations of Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*, and the Age

Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the New York Executive

Law, the Human Rights Law, § 290 *et seq.*, and any other cause of action which can be

inferred from the facts set forth herein.

3.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

4.      Venue is proper pursuant to 28 U.S.C. § 1391.

5.      All prerequisites to the institution of this action have been met.  Charges of

discrimination were duly filed with the EEOC and a Right to Sue letters were issued to

Plaintiffs Kremer, Oluwo and Martin on May 4, 2006, October 24, 2006 and December

22, 2006 respectively.

## PARTIES

6.      Plaintiff, Semyon Kremer ("Kremer"), was and still is a resident of 5 Beech Court, East

Brunswick, New Jersey, 08816.

7.      Plaintiff, Ademola Oluwo ("Oluwo"), was and still is a resident of 1045 East 53rd Street,

Brooklyn, New York, 11234.

8.    Plaintiff, Ian Martin ("Martin"), was and still is a resident of 1365 E 100th Street,

Brooklyn, New York, 11236.

9.    Defendant, New York State Insurance Department ("NYSID" or "Department"), at all

times hereinafter mentioned, was and still is a municipal corporation of the State of New

York, with its principal place of business at 25 Beaver Street, New York, New York,

10004.

10.   Upon information and belief, Anne Francese ("Francese") was during relevant times, an

individual employed by NYSID.  During relevant times, Francese was the Assistant

Director of Administration and Operation, as well as, the Affirmative Action Officer at

NYSID and therefore, was responsible for the NYSID's maintenance and operation,

including, but not limited to, the hiring, firing, promotion and discipline of employees

and all other employment related issues.  Additionally, Defendant Francese was a

policymaker for the NYSID, charged with the responsibility of insuring that employees

were not subjected to unlawful retaliation or harassment. She was also responsible for

properly training and supervising employees with respect to employment issues.

Defendant Francese worked in New York County.

11.   Upon information and belief, Mitchell Gennaoui ("Gennaoui") was during relevant times,

an individual employed by NYSID. During relevant times, Gennaoui was Plaintiff's direct supervisor at NYSID and was responsible for the NYSID's maintenance and operation, including, but not limited to, the hiring, firing, promotion and discipline of employees and all other employment related issues. Additionally, Defendant Gennaoui was a policymaker for the NYSID, charged with the responsibility of insuring that employees were not subjected to unlawful retaliation or harassment. He was also responsible for properly training and supervising employees with respect to employment issues. Defendant Gennaoui worked in New York County.

12.     Upon information and belief, Karen Cole ("Cole") was during relevant times, an individual employed by NYSID. During relevant times, Cole was the Assistant Director of Administration and Operation, as well as, the Affirmative Action Officer at NYSID and therefore, was responsible for the NYSID's maintenance and operation, including, but not limited to, the hiring, firing, promotion and discipline of employees and all other employment related issues. Additionally, Defendant Cole was a policymaker for the NYSID, charged with the responsibility of insuring that employees were not subjected to unlawful retaliation or harassment. She was also responsible for properly training and supervising employees with respect to employment issues. Defendant Cole worked in New York County.

4

## BACKGROUND FACTS PERTAINING TO SEMYON KREMER

13.   Plaintiff, Semyon Kremer, a 51 year-old Russian born American citizen who immigrated to America in 1989, commenced employment with the New York State Insurance Department in 1994.  Plaintiff Kremer was promoted to the position of Insurance Examiner in 1996.

14.   Throughout his employment, Plaintiff Kremer has performed his job duties in an exemplary manner and has consistently received positive employee evaluations.

15.   In 1999, Plaintiff Kremer completed a Civil Service Exam so that he may qualify for a promotion to the position of Senior Insurance Examiner.  However, Plaintiff Kremer was denied promotion.

16.   In 2003, Plaintiff Kremer completed another Civil Service Exam.  Plaintiff Kremer received the score of 90, and his name was listed third on the civil service promotion list.

17.   Nonetheless, Plaintiff Kremer was again denied promotion.

18.   Out of the thirty-two people listed on the active civil service list at that time, only three individuals were not promoted.  Each individual not promoted derived from a foreign

5

nationality and spoke with an accent.

19.     Thereafter, in November 2003, Plaintiff Kremer complained to HR about his lack of

        promotion and the perceived discrimination by the Department against persons of foreign

        national origin.  Plaintiff Kremer complained to the then Assistant Director of

        Administration and Operations, Anne Francese, in her role as the Agency's Affirmative

        Action Officer.  He was informed by Francese that his supervisor, Mitchell Gennaoui, had

        told her that Plaintiff Kremer performed a minimal amount of work and was, thus, denied

        promotion.

20.     However, at that time, Plaintiff Kremer had closed in excess of 1000 case files more than

        the NYSD Consumer Services Bureau's next most effective examiner.

21.     In November 2003, a meeting was held between Plaintiff Kremer and Gennaoui.  Also in

        attendance were Plaintiff Kremer's direct supervisor, Lawrence Bentman ("Bentman"),

        and the Head of the Investigations Unit, John Mansfield ("Mansfield").  During the

        meeting, Gennaoui stated that he did not make the alleged comments to Francese

        concerning Plaintiff Kremer's work and that he had no explanation as to why Plaintiff

        Kremer was not promoted.  Furthermore, Bentman and Mansfield both had told Gennaoui

        that Plaintiff's work was generally good and in many aspects above average.  Gennaoui

        concluded the meeting by telling Plaintiff Kremer that if Gennaoui had any open position,

                                            6

he would promote Plaintiff Kremer.

22.   Thereafter, Plaintiff Kremer wrote a letter to Francese asking for an explanation as to his denial of promotion and as to why she told him that Gennaoui made comments about Plaintiff Kremer's work.  No explanation was given.

23.   On April 21, 2004, Plaintiff Kremer wrote a letter to the then Department Superintendent, Gregory Serio ("Serio") and Human Resource Manager, Karen Cole, wherein he complained about being discriminated against.  Plaintiff Kremer told Serio and Cole that he was denied promotion without any reasonable explanation.  Plaintiff also added that he immigrated to America from Russia after being denied opportunities in Russia because of his Jewish heritage.  Plaintiff Kremer further explained that at least he was given reasons as to why he was denied opportunities in Russia, in contrast to the lack of explanations for his denial of opportunities in the Department.  Moreover, Plaintiff Kremer informed Serio and Cole that he had closed more than twice the amount of insurance cases than all other insurance investigators during a comparable period of time. Plaintiff Kremer also stated that Bentman and Mansfield both considered Plaintiff Kremer to be a good and/or above average investigator.

24.   No response was given to this e-mail.

7

25.    Thereafter, in June 2004, Plaintiff Kremer filed a complaint of discrimination with the New York State Division of Human Rights on the basis of national origin.

26.    In 2005, Plaintiff Kremer took a third Civil Service Exam.  Again, Plaintiff Kremer's name was listed third on the list with an exam score of 90.

27.    Nonetheless, he was denied promoted.  To date, 36 out of the 60 individuals listed on the current list have been promoted.  Those who were promoted were less qualified than Plaintiff Kremer or had less experience than he had.

28.    Included in the promotions was a thirty-two year-old individual with a score of 80 who was outside of Plaintiff Kremer's protected class and who Plaintiff Kremer had trained upon her arrival in the Department.

29.    On February 22, 2006, Plaintiff Kremer sent an e-mail to the Department's superintendent, Howard Mills, wherein he again complained about being "blacklisted." In the e-mail, Plaintiff Kremer reminded Mills that he was listed third with a score of 90 on the previous two civil service promotion lists.  Moreover, Plaintiff Kremer complained the he should not be denied promotion because he was born in Russia.

30.   In the twelve years that Plaintiff Kremer has been employed with the Department, he knows of no foreign national with an accent who has been promoted a list in the Consumer Services Bureau.

31.   As a direct and proximate result of the aforementioned discrimination, Plaintiff Kremer was caused to suffer loss of earnings  in addition to suffering great pain, humiliation, as well as physical and emotional damages.

## BACKGROUND FACTS PERTAINING TO ADEMOLA OLUWO

32.   Ademola Oluwo ("Oluwo") is a dark skinned Nigerian Muslim who commenced employment with the New York State Insurance Department in July 1987.  Plaintiff Oluwo spent his first 2 years with the Department as an Insurance Examiner Trainee.

33.   In July 1989, Plaintiff Oluwo completed his insurance examiner training and was automatically promoted to the position of Insurance Examiner.

34.   As an Insurance Examiner, Plaintiff Oluwo performed in an exemplary manner and consistently received above average ratings in his annual performance evaluations. Moreover, his employee personnel file contains no negative history or questionable content.

9

35.   On December 16, 1989, Plaintiff Oluwo prepared for and completed a New York State Civil Service Exam so that he may qualify for a promotion to the position of Senior Insurance Examiner.

36.   In or around 1993, Plaintiff Oluwo rose to the first position on the list.  However, he was not promoted.  Rather, Plaintiff Oluwo was passed over while his similarly situated counterparts (who were not in Plaintiff Oluwo's protected class), were given promotions despite being lower on the list than Plaintiff Oluwo.  Plaintiff Oluwo was passed over by approximately 13 such persons who were less qualified than Plaintiff Oluwo.

37.   Oluwo spoke to Barbara Watson, who was employed in the Department's Human Resource Office, and complained of the Department's failure to promote him to Senior Insurance Examiner.  No explanation was given as to why Plaintiff Oluwo was not promoted, and the civil service list expired.

38.   Thereafter, Plaintiff Oluwo complained to the Department's Affirmative Action Officer, Miriam Boggio, and was assured that an investigation would occur.  However, no reasons were given as to why Plaintiff Oluwo was not promoted.

39.     Concerned about the disparate treatment received and his non-promotion, Plaintiff Oluwo
        filed an EEOC charge of discrimination on the basis of his race and religion.

40.     On March 4, 1993, Plaintiff Oluwo took another Civil Service Exam so that he may again
        be considered for the Senior Insurance Examiner position.

41.     Plaintiff Oluwo's name eventually became "reachable" on the list.  However, his name
        was passed over yet again.  For a second time, approximately 20 of his similarly situated
        White counterparts, who were listed beneath Plaintiff Oluwo on the civil service exam
        list, were given promotions, whereas Plaintiff Oluwo was not.  Moreover, individuals
        who were given promotions had less experience than Plaintiff Oluwo.

42.     Plaintiff Oluwo again complained about his non-promotion to the Human Resources
        Department and also to the Insurance Department's Bureau Chief, Hank Lauer.  No
        reasons were proffered as to why Plaintiff Oluwo was not promoted.

43.     In or around November 1994, another Civil Service exam was given.  Plaintiff Oluwo
        decided not to prepare for and take the exam because he believed such efforts to be futile
        for he continually was passed over for promotion despite completing such examinations.

44.    Moreover, almost all the names on the civil service list were promoted within one year

from the time the list was released.  Plaintiff Oluwo remained on the list and eventually

the list expired; a new examination was then offered for the series of Senior Insurance

Examiner positions.

45.    Each Civil Service Exam required approximately 3-4 months of preparation for Plaintiff

Oluwo, and he was required to study voluminous books of material as part of that

preparation.  Therefore, due in part to his three consecutive non-promotions following

civil service exams, Plaintiff Oluwo chose not to take the exam given in 2000.

46.    In 2000, Plaintiff Oluwo was elected as his union president.  As union president, Plaintiff

Oluwo raised complaints of racial disparity.  For example, Plaintiff Oluwo complained

about how White individuals were given promotions despite having negative history

noted in their personnel files, while similarly situated minority employees, such as

Plaintiff Oluwo, were denied promotions.

47.    Plaintiff Oluwo was singled out and harassed because of his opposition to this.  For

example, Plaintiff Oluwo occasionally used his office e-mail to receive and submit

information that conjunctively pertained to his work in the Insurance Department and his

union responsibilities.  Plaintiff Oluwo was given a memo alleging that this use of e-mail

was improper.  Previous White union presidents utilized the office e-mail in a similar

12

fashion, and did not receive a memo telling them to cease such usage. Moreover, other White employees use the office e-mail for personal use without receiving any communication prohibiting their usage.

48.     In 2003, Plaintiff Oluwo took another Civil Service Exam. His name became "reachable" for promotion in 2003, however, he was again passed over for promotion by approximately 10 of his similarly situated less qualified counterparts (who were not in his protected class).

49.     In 2004, Plaintiff Oluwo was finally given a promotion to Senior Insurance Examiner. Due in part to his three previous non-promotions, Plaintiff Oluwo had already fallen far behind his expected career path. After 15 years of experience with the Insurance Department, Plaintiff Oluwo had expected to be in a higher position than that which was given. However, Plaintiff Oluwo was unable to reach the higher executive level positions for which he was qualified because he was prohibited from earlier advancement.

50.     Throughout his eighteen years employed at the Insurance Department, Plaintiff Oluwo has witnessed and experienced disparate treatment between minorities and their similarly situated White counterparts. Moreover, Plaintiff Oluwo has been subjected to discrimination based on his Islamic religious beliefs. For example, on casual Fridays, Plaintiff Oluwo has worn traditional Muslim and African attire that comports with the

standards of appropriate work-place attire, and has been subjected to statements by his supervisors and co-workers to the effect of "Why are you wearing pajamas?" or "Why are you wearing a dress?"

51.     On February 2, 2006, Plaintiff Oluwo notified, in writing, the Department Bureau Chief Mark Presser, about an incident that occurred days earlier where a White male went on a 5 minute rampage during office hours that included explicative language and inappropriate behavior. The individual mentioned was not disciplined, and rather, was relocated to a different office location. Minority employees have been dismissed for less confrontational behavior than what was exhibited. No response has been given to his complaint.

52.     On February 24, 2006, Plaintiff Oluwo wrote to Bureau Chief Presser about this disparate treatment wherein he stated "[i]t is really surprising to note that there appears to be two set (sic) of rules in this agency regarding the treatment of employees." Additionally, Plaintiff Oluwo stated that "it is quite evident that there exist (sic) preferential treatments (sic) in this agency." Plaintiff Oluwo's letter mentioned that a minority had passed away and no inter-office e-mail was sent until five days after the Department was notified of his passing. The letter then mentioned that a White employee had passed away and an e-mail was promptly distributed to notify other employees of his death. There has been no response to this letter.

53.   On March 8, 2006, Plaintiff Oluwo wrote an additional letter to the authorities at the Insurance Department wherein he questioned "is the Administration blatantly telling employees that there are two sets of rules?" Plaintiff Oluwo's question remains unanswered.

54.   Since the New York State Insurance Department's inception in 1859, no Black person, or any minority, has ever risen to an upper-level management position. Moreover, Plaintiff Oluwo has consistently witnessed White employees who were trained by minorities receive promotions whereas the minority who conducted the training remained at a lower level. Plaintiff Oluwo has additionally recognized that White employees were often fast-tracked to higher positions. Furthermore, civil service lists that contained only minorities often became "stagnant" and ultimately were exhausted without promoting the minorities.

55.   The actions set forth above were undertaken without just cause and were not taken against similarly situated White employees.

## BACKGROUND FACTS PERTAINING TO IAN MARTIN

56.   Ian Martin is a dark skinned Jamaican, with a Masters of Arts in Economics; he is also a CPA

15

57.   Plaintiff Martin commenced employment with the New York State Insurance Department ("Insurance Department" or "Department") in 1993.  Plaintiff Martin spent his first 2 years with the Department as an Insurance Examiner Trainee.

58.   In 1995, Plaintiff Martin completed his insurance examiner training and was promoted to the position of Insurance Examiner.

59.   As an Insurance Examiner, Plaintiff Martin performed his duties in an exemplary manner and consistently received satisfactory ratings in his annual performance evaluations.

60.   In 1998, Plaintiff Martin completed a New York State Civil Service Exam so that he may qualify for a promotion to the position of Senior Insurance Examiner.

61.   In 1999, Plaintiff Martin became "reachable" for promotion.  However, he was not promoted.  Rather, Plaintiff Martin was passed over while his similarly situated counterparts (who were not in Plaintiff Martin's protected class), were given promotions despite being lower on the list than Plaintiff Martin.  Plaintiff Martin complained about his non-promotion to the assistant bureau chief, Mitchel Gennaoui ("Gennaoui").  However, no explanation was given as to why Plaintiff Martin was not promoted.

62.     In 2002, Plaintiff Martin took another Civil Service Exam so that he may again be

considered for the Senior Insurance Examiner position.


63.     In 2003, Plaintiff Martin became "reachable" for promotion.  However, his name was

passed over yet again.  Approximately 15 of his similarly situated counterparts (who were

not in his protected class), who were listed beneath Plaintiff Martin on the civil service

exam list, were given promotions, whereas Plaintiff Martin was not.  Moreover,

individuals who were given promotions had less experience than Plaintiff Martin.  In fact,

one individual had negative history removed from his personnel file by the bureau just so

he could receive the promotion.


64.     In 2003, Plaintiff Martin complained about his non-promotion to his union shop steward,

Ademola Oluwo, and Oluwo complained to the Department's Personnel Officer, Anne

Francese, on Plaintiff Martin's behalf.  Francese stated that assistant bureau chief

Gennaoui told her that Martin "performed minimal work in the bureau."  However, this

statement was pretextual.  Never has any of Plaintiff Martin's annual evaluations

suggested that he performed minimal work, and such evaluations are required by the

Collective Bargaining Agreement to reflect any and all performance-related statements

such as the one made by Gennaoui.  Moreover, Plaintiff Martin met with Union

Representative, Jane Schwartz ("Schwartz"), to discuss this matter further.  Schwartz

confirmed the statement that was made by Gennaoui.

17

65.     Plaintiff Martin subsequently completed ten insurance courses (and is now preparing to

        take additional courses) so that he would better his chances for promotion, and so that he

        would become more valuable to the Department.

66.     In 2005, Plaintiff Martin took another Civil Service Exam.  Plaintiff Martin scored the

        highest score and was placed at the very top of the list.  Nonetheless, Plaintiff Martin was

        again passed over for promotion.  At least 32 individuals listed beneath Plaintiff Martin

        have since received promotions.

67.     Since the New York State Insurance Department's inception in 1859, no Black insurance

        examiner has ever risen to an upper-level management position.  Moreover, Plaintiff

        Martin has consistently witnessed White employees who were trained by minorities

        receive promotions whereas the minority who conducted the training remained at a lower

        level.  Plaintiff Martin has additionally recognized that White employees were often fast-

        tracked to higher positions.  Furthermore, civil service lists that contained mostly

        minorities often became "stagnant" and ultimately were exhausted without promoting the

        minorities.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST ALL THE DEFENDANTS

### (42 U.S.C. 2000e et seq.)

68.     Based on the foregoing, Plaintiffs Kremer, Oluwo and Martin have been subjected to

unlawful discrimination by the Defendants on the basis of their national origin in

violation of 42 U.S.C. 2000e et seq., as well as all applicable state and local laws.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST ALL THE DEFENDANTS

### (Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.)

69.     Plaintiff Kremer has also subjected to unlawful discrimination by the Defendants on the

basis of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §

621 et seq.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST THE NEW YORK STATE INSURANCE DEPARTMENT AND ANNE FRANCESE, MITCHELL GENNAOUI AND KAREN COLE  IN THEIR OFFICIAL CAPACITIES

### (42 U.S.C. § 1983)

70.     Defendants, while acting under color of state law, deprived Plaintiffs of their

constitutional rights, as secured by the Fourteenth Amendment to the United States

Constitution, in violation of 42 U.S.C. § 1983.  The Defendants have intentionally

committed, condoned or were deliberately indifferent to the aforementioned violations of

Plaintiffs' constitutional rights in that the Defendants' custom or practice of

discriminating and/or retaliating against Plaintiffs were based on his constitutionally-

protected forms of speech, expression and association.

71.     Municipal officials intentionally committed, condoned or were deliberately indifferent to

the aforementioned violations of Plaintiffs' constitutional rights.  Such deliberate

indifference may be inferred in the following ways:

> (A) Defendants had a custom or practice of harassing the Plaintiffs based on their national origin and/or age.  The discriminatory practices were so persistent and widespread that they constitute the constructive acquiescence of  policymakers.

20

(B) Supervisors failed to properly investigate and address allegations of discrimination.

(C) Inadequate training/supervision was so likely to result in the discrimination, that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

(D) Policymakers engaged in and/or tacitly condoned the discrimination.

72.     By reason of the foregoing, plaintiff is entitled to all forms of equitable relief which may alleviate and/or redress the unlawful activities described above, including, but not limited to, reinstatement.

## AS AND FOR A FOURTH AND FIFTH CAUSE OF ACTION AGAINST ANNE FRANCESE, MITCHELL GENNAOUI AND KAREN COLE IN THEIR INDIVIDUAL CAPACITIES

### (42 U.S.C. § 1983, 42 U.S.C. § 1981)

73.     Defendants Anne Francese, Mitchell Gennaoui and Karen Cole unlawfully participated in and permitted the aforementioned discrimination to perpetuate, without abatement, in violation of Plaintiffs' constitutional and statutory rights pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1981, incorporated through the Fourteenth Amendment.

74.     By reason of the foregoing, Plaintiffs have suffered a loss of earnings and benefits, future earnings and benefits, great pain and mental anguish.  Plaintiffs are thus entitled to all

21

forms of applicable compensatory damages, equitable relief, and any other damages and/or remedies permissible under law.

WHEREFORE, Plaintiffs demand judgment against defendant for all compensatory, emotional, physical, and punitive damages (against the individuals under Section 1983), lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which plaintiffs are entitled.  Plaintiffs demands a trial by jury.

Dated: Carle Place, New York
       January 17, 2007

Respectfully submitted,

LEEDS MORELLI & BROWN, P.C.
*Attorneys for Plaintiffs*
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

By: _____
       RICK OSTROVE (RO-7248)
       GREGORY A. TSONIS (GT-5737)

22