UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\----------------------------------------------------------- X

SEMYON KREMER, et al.,                    :
                                          :
                          Plaintiffs,     :
                                          :
            -against-                     :          **OPINION**
                                          :
                                          :          06 Civ. 9949 (RLC)
NEW YORK STATE INSURANCE DEPT., et al.,   :
                                          :
                          Defendants.     :
_____ X

APPEARANCES

Gregory Aris Tsonis
Rick Ostrove
Leeds Morelli & Brown, P.C.
One Old Country Road
Suite 347
Carle Place, NY 11514
*Attorneys for Plaintiffs*

Eugene Benger
Hillary Robin Kastleman
New York State Office of the Attorney General
120 Broadway
New York, NY 10271
*Attorneys for Defendants*

**ROBERT L. CARTER, District Judge**

Defendants move to dismiss portions of Plaintiffs' Amended Complaint pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons herein, the court denies in part and grants in part Defendants' motion.

## BACKGROUND

Plaintiff Semyon Kremer filed a complaint on October 19, 2006, against the New York State Insurance Department ("Department"), Anne Francese, Mitchell Gennaoui, and Karen Cole (all together, "Defendants").  Plaintiffs Ademola Oluwo and Ian Martin (together, including Kremer, "Plaintiffs") joined the action, and an amended complaint was filed on January 22, 2007 ("Amended Complaint").  Plaintiffs are all employees of the Department, who, they allege, discriminated against them illegally.

According to the Amended Complaint, Kremer is a Russian born American who started working at the Department in 1994.  He sat for New York State Civil Service examinations in 1999 and 2003 to qualify for promotion to the position of Senior Insurance Examiner.  He was denied promotion both times.  Kremer scored a 90 on the 2003 exam, and ascended to number three on the civil service promotions list.  According to Kremer, of the 32 individuals listed at that time, only three were not promoted, and of those three, each was a foreigner who spoke with an accent.  In 2005, Kremer sat for a third examination, scored a 90, and reached number three on the promotions list.  He was denied promotion again.

Kremer alleges discrimination in the terms and conditions of his employment based on his national origin, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.* ("Title VII"); discrimination in the terms and conditions of his employment based on his national origin, and retaliation under the New

York State Human Rights Law, N.Y. Exec. L. § 296 *et seq.* ("HRL"); and discrimination in the terms and conditions of his employment based on national origin, and retaliation under 42 U.S.C. §§ 1983 and 1981 ("§§ 1983 and 1981").  Also, in his Memorandum of Law in Opposition to Defendants' Motion to Dismiss Portions of the Amended Complaint ("Opposition Memo"), Kremer seems to assert for the first time claims of illegal discrimination based on age in violation of the HRL and §§ 1983 and 1981.

According to the Amended Complaint, Oluwo is a dark skinned Nigerian Muslim who started working at the Department in July 1987 as an Insurance Examiner Trainee. In July 1989 he completed his training and was promoted to the position of Insurance Examiner.  In 2000, Oluwo was elected as his union's president.  In 2003, Oluwo completed a New York State Civil Service Exam to qualify for promotion to the position of Senior Insurance Examiner.  He became eligible for promotion that same year, but was passed over.  He was eventually promoted to Senior Insurance Examiner in 2004.  Oluwo tells that throughout his employ he has witnessed and experienced racial and religious discrimination.

Oluwo alleges discrimination in the terms and conditions of his employment based on his race, color, religion and national origin, creation of a hostile work environment, and retaliation under Title VII; discrimination in the terms and conditions of his employment based on his race, color, religion and national origin, the creation of a hostile work environment, and retaliation under the HRL; and discrimination in the terms and conditions of his employment based on his race, color, religion and national origin, the creation of a hostile work environment, and retaliation under §§ 1983 and 1981.

According to the Amended Complaint, Martin is a dark skinned Jamaican who began work with the Department in 1993 as an Insurance Examiner Trainee.  He was promoted to Insurance Examiner in 1995.  In 1998, Martin completed a New York State Civil Service Exam to be considered for the Senior Insurance Examiner position.  He became eligible for promotion in 1999, but was passed over.  He took another Civil Service Exam in 2002, became eligible for promotion in 2003, but was passed over again.  In 2005, Martin sat for third Civil Service Exam, achieved the highest score, and was passed over for promotion again.

Martin alleges discrimination in the terms and conditions of his employment based on his race, color, and national origin, retaliation, and creation of a hostile work environment under Title VII; discrimination in the terms and conditions of his employment based on his race, color, and national origin, retaliation and creation of a hostile work environment under the HRL; and discrimination in the terms and conditions of his employment based on his race, color, and national origin and creation of a hostile work environment under §§ 1983 and 1981.

Defendants are seeking dismissal of Kremer's putative age discrimination claims, all of Oluwo's claims, and Martin's hostile work environment and retaliation claims.

## DISCUSSION

A complaint may be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure "when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  Dismissal pursuant to 12(b)(6) of the Federal Rules is appropriate where the plaintiff has failed "to state a claim upon which relief can be granted."  Cortec Indus., Inc. v. Sum Holding L.P.,

4

949 F.2d 42, 47 (2d Cir. 1991) (quoting FED. R. CIV. P. 12(b)(6)).  To survive 12(b)(6)

scrutiny, the complaint must allege "enough facts to state a claim for relief that is

plausible on its face."  Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting Bell

Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)) (quotation marks omitted).  The

court accepts "the material facts alleged in the complaint as true and construe[s] all

reasonable inferences in the plaintiff's favor."  Hernandez v. Coughlin, 18 F.3d 133, 136

(2d Cir. 1994).

**Kremer**

Kremer originally alleged that he was subjected to unlawful discrimination on the

basis of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C.

§ 621, *et seq.* ("ADEA").  While he withdraws the ADEA claim in the Opposition Memo,

he invokes there, for the first time, HRL and §§ 1983 and 1981 claims for age

discrimination.  Those causes of action were never asserted in the Amended Complaint.

Kremer's pleadings cannot sustain an allegation that Defendants' conduct violated

either § 1981 or § 1983.  First, § 1981 does not provide a federal cause of action for age

discrimination.  See, e.g., Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998).

Second, since § 1983 "merely provides a method for vindicating federal rights elsewhere

conferred," Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (quoting

Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)) (quotation marks omitted), so long as

Kremer does not allege violation of any federal statute or constitutional provision

separate from § 1983, it is unavailing.

Furthermore, the court lacks the subject matter jurisdiction to adjudicate a claim

against the Department under the HRL.  The Eleventh Amendment precludes an

individual plaintiff from seeking damages in federal court against a State or its agencies absent a waiver by the State or abrogation by Congress, Pennhurst State School  Hosp. v. Halderman, 465 U.S. 89, 100-02 (1984), and it is well settled that "[n]othing in the HRL indicates that New York has waived its immunity such that [an individual plaintiff] could pursue his HRL claim in federal court,"  Small v. Caiola, No. 96 Civ. 7945 (LMM), 2001 WL 781080, at *2 (S.D.N.Y. June 19, 2000).

The court does not lack the subject matter jurisdiction to adjudicate Kremer's claim against the individual defendants, however.  See id. ("The Eleventh Amendment provides no immunity for state officials where . . . they are sued in their individual capacities.") (citing Dube v. State Univ. of New York, 900 F.2d 587, 595 (2d Cir. 1990)). Defendants argue that because the court lacks subject matter jurisdiction to find primary violation of the HRL by the Department, it cannot find the individual defendants liable as a matter of law.  In support of their contention, Defendants cite cases finding that employer liability is a prerequisite for supervisor liability under the HRL.  See Moran v. Fashion Inst. of Tech., No. 00 Civ. 1275 (KMW) (RLE), 2002 WL 31288272, at *9 (S.D.N.Y. Oct. 7, 2002) ("plaintiff must first establish employer liability before prevailing on a claim against a supervisor individually"); Lewis v. Triborough Bridge & Tunnel Auth., 77 F. Supp. 2d 376, 382 n.8 (S.D.N.Y. 1999) ("in the absence of a finding of liability against the employer, the individual supervisors cannot be held liable under HRL § 296(6)").  In those cases, however, the courts dismissed the claims on the merits, not because of immunity.

Defendants also argue that Kremer's allegations fail as a matter of law because the Amended Complaint does not allege facts suggesting that the individual defendants

actually participated in this denial of promotion.  This argument fails because Kremer has

pled facts sufficient to suggest that the Defendants may have been involved in the alleged

discriminatory scheme.  Specifically, the Amended Complaint claims that Francese,

Gennaoui and Cole were responsible for the promotion of employees, and that a person

nineteen years Kremer's junior who scored ten points lower on the Civil Service Exam

was promoted while Kremer was not.  These are enough facts to generate a claim for

relief that is plausible on its face.

Nevertheless, it is inescapable that the Amended Complaint must provide fair

notice of the legal basis of Kremer's claims, and it does not.  Therefore, Defendants'

motion to dismiss Kremer's age discrimination claim is granted.

**Oluwo**

*Religious Discrimination*

Defendants contend that Oluwo's claim for religious discrimination is precluded

by a prior, 1997 lawsuit against the Department in which the court granted summary

judgment on identical claims of religious discrimination because they were meritless.

See Oluwo v. N.Y. State Ins. Dept., No. 94 Civ. 2930 (JES), 1997 WL 311937 (S.D.N.Y.

June 9, 1997).

The doctrine of res judicata "bars later litigation if [an] earlier decision was (1) a

final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case

involving the same parties or their privies, and (4) involving the same cause of action."

EDP Med. Computer Sys. v. United States, 480 F.3d 621, 624 (2d Cir. 2007) (quoting In

re Teltronics Servs., Inc., 762 F.2d 185, 190 (2d Cir. 1985)) (quotation marks omitted).

"Summary judgment constitutes a final judgment on the merits for purposes of applying res judicata." Dowd v. Soc'y of St. Columbans, 861 F.2d 761, 764 (1st Cir. 1988).

Oluwo has articulated no reason why this action should not be barred by the doctrine of res judicata. He makes no attempt to distinguish this claim from the one he raised in the 1997 lawsuit, and there seems to be no genuine dispute that that action involved the Department, that the claims arose from the same transactions, or that dismissal of the action constituted a final judgment on the merits in a court of competent jurisdiction. Accordingly, Oluwo's religious discrimination claim is barred by the doctrine of res judicata.

Defendants' motion to dismiss Oluwo's claim of religious discrimination is granted.

*Retaliation*

Defendants contend that Oluwo does not plead sufficient facts to state a claim for retaliation. "To make out a *prima facie* case of retaliation under Title VII, [plaintiff] must show: protected participation or opposition under Title VII known by the alleged retaliator; an employment action disadvantaging the person engaged in the protected activity; and a causal connection between the protected activity and the disadvantageous employment action." DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987) (citations omitted). Title VII requires a plaintiff to show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citations and quotation marks omitted).

Oluwo alleges that, as union president, he complained of racial disparity, and, in consequence, was retaliated against.  Specifically, he alleges, when he used his office email to receive and submit information that conjunctively pertained to his work for the Department and his union responsibilities, he was given a memo accusing him of improper use of email.  By comparison, Oluwo contends, previous, white union presidents utilized the office email in a similar manner without reproach, as have other white employees.

Defendants argue that Oluwo fails to allege any adverse employment action resulting from the memo he was given.  In fact, they argue, after complaining of the perceived discrimination and receiving the memo, Oluwo was promoted.  Therefore, the Department contends, Oluwo fails to allege any injury or harm that resulted from having engaged in any protected activity.  This argument misses the point.  The issuance of the memo itself may amount to an adverse employment action because it may demonstrate that Oluwo became subject to increased scrutiny and elevated standards of behavior in retaliation for having engaged in protected activity.  A rational factfinder could infer that a reasonable employee in Oluwo's position could well be dissuaded from making a charge of discrimination if doing so would result in the imposition of stricter oversight.  Accordingly, Oluwo has adduced facts sufficient to state a plausible claim that he suffered an adverse employment action, and any subsequent promotion does not undermine his pleading as a matter of law.

The Department's motion to dismiss Oluwo's claim for unlawful retaliation is denied.

*Hostile work environment*

The Department contends that Oluwo's allegations also fail as a matter of law to state a claim for hostile work environment.  To demonstrate a hostile work environment actionable under Title VII, the workplace must be "permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-67 (1986)) (citations omitted).  While there is no precise test for determining whether conduct is severe or pervasive enough to constitute a hostile work environment, certain guideposts include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23.  The employment environment must be abusive both objectively and subjectively.  See id. at 21.  In addition, Plaintiffs must demonstrate "that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996)) (quotation marks omitted).  "That burden may be satisfied by a showing that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" Kasper v. City of Middletown, 352 F.Supp.2d 216, 231 n.19 (D.Conn. 2005) (quoting Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004)).

Oluwo alleges that he was subjected to a hostile work environment based on three incidents and the Department's failure to respond to certain of his complaints.  First,

Oluwo tells of being subjected to statements by his supervisors and co-workers to the effect of "Why are you wearing pajamas?" and "Why are you wearing a dress?" when he wore "traditional Muslim and African" attire on certain days (Am. Compl. ¶ 50).  Second, Oluwo describes of an incident involving "a White male [who] went on a 5 minute rampage during office hours that included explicative [*sic*] language and inappropriate behavior" (Id. at ¶ 51).  According to Oluwo, instead of being disciplined, the individual was relocated, whereas the Department has dismissed minority employees for less confrontational behavior.  Finally, Oluwo recounts an instance when, upon a minority individual's death, the Department neglected to circulate an inter-office death notice for five days.  By comparison, according to Oluwo, when a white employee died, notice was promptly circulated.

These instances are insufficient to raise a right to relief for hostile work environment above the speculative level.  As described in the Amended Complaint, the controversial comments and actions were neither individually nor collectively severe enough to have altered the conditions of, or show that discrimination was pervasive in, Oluwo's working environment.  Since "[s]imple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment," Petrosino v. Bell Atl., 385 F.3d 210, 223 (2d Cir. 2004), it is implausible that, on these facts, a reasonable juror could conclude that the Department was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of Oluwo's environment, and that a specific basis exists for imputing the conduct that created the hostile environment to the Department, see Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003).

Furthermore, the Department's alleged failure to respond to Oluwo's complaints is of no moment because the controversial conduct does not rise to the level of a hostile work environment.

Defendants' motion to dismiss Oluwo's claim for hostile work environment is granted.

**Martin**

*Hostile work environment*

Defendants contend that Martin's allegations fail to state a claim for hostile work environment. Indeed, Martin's pleadings are devoid of relevant factual allegations, and do not give the Department fair notice of the basis for his hostile work environment claim. Since he fails to "allege . . . those facts *necessary* to a finding of liability," Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 343 (2d Cir. 2006), the Amended Complaint does not satisfy Rule 8 of the Federal Rules.

Defendants' motion to dismiss Martin's claim for hostile work environment is granted.

*Retaliation claim*

Martin also fails to allege facts to support a retaliation cause of action. As above, Martin does not specify the grounds on which his retaliation claim rests, therefore he does not satisfy Rule 8 of the Federal Rules.

Defendants' motion to dismiss Martin's claim for unlawful retaliation is granted.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is granted as to Kremer's putative claim of age discrimination; Oluwo's claim of religious

discrimination; Oluwo's claim of hostile work environment; Martin's claim of hostile

work environment; and Martin's claim of unlawful retaliation.  Defendants' motion to

dismiss is denied as to Oluwo's claim of unlawful retaliation.

Parties will submit to the court a proposed joint scheduling order by **April 10,**

**2009.**

**IT IS SO ORDERED.**

DATED:      New York, New York
            March 25, 2009

Robert L. Carter
United States District Judge

13